JULIA ENRIQUETA SCHRODER, Appellant, *v.* THE REGISTRAR OF PROPERTY OF SAN GERMÁN, Respondent.

No. 1396. Decided January 4, 1962.

*Carlos García Méndez* for appellant. The Registrar appeared by brief.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

By deed No. 55 of May 13, 1952 executed before Notary Carlos García Méndez, the spouses Juan Ignacio Ramírez and Julia Enriqueta Schroder constituted a voluntary mortgage on two rural properties situated in the Municipality of Lajas in favor of the spouses Orlando Irizarry Morales and Carmen Emilia Irizarry, in order to secure the payment of the sum of $6,000 within a period of three years—three annual instalments of $2,000 each. In one of the clauses of the mortgage the mortgagors waived notice in the event of assignment, in whole or in part, of the credit (art. 152 of the Mortgage Law, 30 L.P.R.A. § 265). This mortgage credit was duly recorded in the Registry of Property.

By deed No. 18 of April 8, 1953 executed before Notary Leo Irizarry, the mortgagees constituted a mortgage on the said credit to secure a promissory note to the order of the holder for the sum of $6,000 principal. It was agreed that the submortgage "is left pending the resolution of the mortgagors, who consent that notice of the contract be given to the debtor, Juan Ignacio Ramírez, to enable him not to pay his debt without the concurrence or consent of whomever appears to be submortgagee as bearer of the obligation secured." The submortgage was recorded.

Lastly, on March 29, 1961 the mortgagees executed deed No. 119 before Notary Carlos García Méndez, whereby they confessed having received the amount due and consented to the cancellation of the mortgage constituted in their favor. Appellant Julia Enriqueta Schroder appeared in the same instrument and requested the cancellation of the record of the submortgage, inasmuch as the credit object of the submortgage had also been cancelled. The registrar refused to record the cancellation of the mortgage as well as of the submortgage on the ground that it had not been established that

the submortgagee had consented to the cancellation of the mortgage or of the submortgage. The registrar's decision is challenged.

■ Subdivision 8 of art. 107 of the Mortgage Law, 30 L.P.R.A. § 203,[1] authorizes the constitution of a mortgage on another mortgage upon stating that "The following may be mortgaged, but with the restrictions hereinafter mentioned: ... 8. The right of voluntary mortgage, but that constituted on such right shall be subject to the resolution thereof." Hence, a *limited* alienation of a mortgage credit is permissible.[2] Rule 4 of art. 137 of the Mortgage Regulations, 30 L.P.R.A. § 1037, relative to the cancellation of records whose existence is not dependent on the will of the interested parties, calls this juridical figure by the name of submortgage. This figure, to which the law expressly refers laconically only to the moments of its life and death, is curious.

■ For the purposes of the problem before us, the said rule provides that:

"The record of submortgages treated of in article 107 of the law, subdivision 8, constituted without the formalities established by article 152 of the law for the assignment of mortgage credits, and those of this class embraced in article 154, may be cancelled by virtue of the instrument showing the resolution of the right of the submortgage ■ or assignee."

---

[1] The wording of this article is identical with its counterpart in the Spanish Mortgage Law, subd. 4 of art. 107.

[2] For an interesting discussion on the determination of the possible existence of the submortgage according to the modern-law system—which denies it and only admits the pledge on mortgage credits, namely, the hypothecation of a credit which carries as accessory the mortgage as security for payment—or the Roman-law system—which admits it and calls it *pignus pignoris*—see IV Roca Sastre, *Derecho Hipotecario* 277-82 (1954 ed.) ; Díez Pastor, *Notas Acerca de la Naturaleza y Contenido de la Subhipoteca* (6 *Revista Crítica de Derecho Inmobiliario* 440-57, 1930).

It may be noted that, indirectly and for the purpose of determining certain consequences for the cancellation, the requirements necessary for the constitution of the submortgage are those relating to the assignment of mortgage credits, which according to art. 152 of the Law, 30 L.P.R.A. § 265, are three: (1) that it be effected by means of a public instrument; (2) *that notice be given to the debtor;* and (3) that it be recorded in the Registry of Property. See *Colón* v. *Santiago,* 64 P.R.R. 298 (1944); *Montilla* v. *Van Syckel et al.,* 8 P.R.R. 153 (1905); *Valls* v. *Blanes,* 7 P.R.R. 385 (1904).

■■ From the foregoing it follows that if the constitution of the submortgage has not been notified to the mortgagor, the presentation of the deed of cancellation of the mortgage shall be sufficient for its cancellation; however, if notice has been given, the concurrence of the submortgagee shall be necessary for the purpose of giving his consent.[3]

Roca Sastre discusses the question as follows in IV *op. cit.* at 282–83:

"The mortgage on another mortgage being permissible in our positive law, the former is subject to the restriction derived from the subsistence of the latter, since according to subdivision 4 of art. 107 of the Law the submortgage *is left pending the resolution* (it would be better to say the extinguishment) of the right of mortgage which is affected thereby.

"The most natural and frequent mode of extinguishing this mortgage is the payment tendered by the owner of the property encumbered to the senior creditor.

---

[3] Subdivision 4 of art. 175 of the Regulations of the Spanish Mortgage Law, counterpart of art. 137 of our Regulations, is even more specific because it expressly provides that "If such requirements (among them, that of notice) have been met, the consent of the submortgagee or the deposit of the amount secured by the submortgage, if it is equal or less than the amount secured by the mortgage, shall also be necessary." In view of the language of art. 137 of the Regulations and the reference therein to the submortgages constituted without the formalities prescribed by art. 152 of the Law, the absence of a similar provision in Puerto Rico does not alter the conclusion stated.

"However, the law does not forsake the interests of the submortgagee, although for his protection it requires that the requirement of *notice* of the submortgage to the debtor be fulfilled. It is the same formality of the *denuntiatio* of the assignment of mortgage credits whereby the existence of the submortgage is formally *notified* to the debtor for the purpose of not considering thereafter as proper payment the payment made to the submortgagee, since once the debtor is aware of the existence of the submortgage he can not pay his debt without the submortgagee's *consent* or make his *deposit* formally. On the other hand, if such notice is not given, if the debtor pays to the submortgagee, the payment is considered proper and the mortgage is *extinguished*, in which case the submortgagee may not collect his credit. This is another restriction to the submortgage, although in this case it arises from the submortgagee's negligence, possibly in connection with the submortgagor's bad faith.

"Rule 4 of art. 175 of the Regulations prescribes these effects with a view to the *cancellation* of the submortgage. It provides that 'the record of submortgages constituted without the formalities prescribed by art. 149 of the Law may be cancelled by virtue of the instrument showing the resolution of the right of the submortgagee. If these requirements have been met, the submortgagee's consent or the deposit of the amount secured by the submortgage, provided it is equal or less than the amount secured by the mortgage, shall also be necessary.'"

■ Antonio Gullón Ballesteros, assistant professor of civil law of the University of Sevilla, in his treatise *El Derecho Real de Subhipoteca* (Bosch ed., Barcelona, 1957), says that the notice has a dual purpose: formal, as respects the cancellation of the submortgage; and material, by reason of the submortgagee's intervention in the payment of the credit. And he adds at pp. 119–20:

"If notice of the submortgage has been given, the consent of the record owner of the submortgage is necessary together with the previous deed. We meet an additional requirement which is added to the former ones prescribed by law, vaguely and imprecisely, with respect to the submortgagee's consent but without specifying the manner of giving it and where it is to be set forth. Which is the purpose of this additional require-

.ment? Will it be necessary for the cancellation of the mortgage and indirectly of the submortgage, or only for the cancellation, according to art. 175, of the record of the submortgage? We have already pointed out the lack of precision in the law in not expressly subordinating the acts of the cancellation of the submortgage to those of the mortgage. Based on this premise and on art. 107 of the Law, we conclude by affirming that the immediate and direct purpose of the submortgagee's intervention is not the cancellation of the submortgage but of the mortgage. In fact, since the submortgage is a figure the material and juridical basis of which is the mortgage, there is no question that any act which affects the latter, especially if it is an act which extinguishes the same, will affect the right of the owner of the former, thereby granting him intervention in the act of cancellation. The article cited proves it *a contrario sensu*. If this requirement were necessary solely and exclusively for the cancellation of the submortgage, what would be its purpose? None, because it would make little difference whether the submortgagee would not consent to the cancellation of his realproperty right if the mortgage has already been extinguished without his intervention in the act of cancellation. Since this is an absurdity which clashes with subd. 4 of art. 107 of the Law the lawmaker himself has taken care to compel the submortgagee to co-operate in the act of cancellation of the object of his lien in order that both guaranties may disappear from the registry simultaneously."

Morell y Terry shares the same view in 3 *Comentarios a la Ley Hipotecaria* 420 (2d ed. 1928).

It is necessary to make an incursion into our previous opinions in order to clarify concepts and confine doctrines. *Mató* v. *Banco Territorial y Agrícola de P. R.*, 30 P.R.R. 16 (1921), relied on by the appellant, discussed the question *in passim*, and to that effect it was said at p. 17:

"It is an admitted fact that the bank submortgaged the said mortgage lien without asking the mortgagor's consent, and the first question that arises is whether or not the bank had a right to do so. In our opinion this question must be answered in the affirmative, in accordance with subdivision 8 of article 107 of the Mortgage Law, which provides as follows: 'The following

may be mortgaged, but with the restrictions hereinafter mentioned....8. The right of voluntary mortgage, but that constituted on such right shall be subject to the resolution thereof.'"

It is clear that in making such affirmation only the general provision embodied in subd. 8 of art. 107 of the Mortgage Law was considered, and that rule four of art. 137 of the Regulations was not taken into account at all. The transcribed affirmation should therefore be considered valid insofar as it refers to cancellation of submortgages in which notice was not given to the mortgagor.[4] The registrar's decision is based on *León* v. *Registrar*, 46 P.R.R. 53 (1934), in which it was said that an attached mortgage credit can not be paid and canceled in the registry without the intervention of the attaching creditors. *Cf. González* v. *Registrar*, 54 P.R.R. 320. The registrar was not mistaken in assuming that if such consideration deserved a personal right such as the attachment, at least the same consequences should result in the case of a real-property right such as the recorded submortgage. However, it was not necessary to resort to this resolution since the question raised is expressly regulated by the Mortgage Law, whose provisions are the only ones applicable.

 It remains to consider whether it appears somehow that notice of the constitution of the submortgage was given to the mortgagor. From an examination of the record before us it simply appears that when the deed of submortgage was executed, the mortgagee, who was also the submortgagor, assumed the obligation to notify the principal debtor. There is no showing that this was done. However, upon appearing at the execution of the deed of cancellation

---

[4] We have examined the record of the appeal in the case of *Mató* v. *Banco Territorial, etc., supra*, and it appears from the complaint that it was affirmatively alleged that the bank submortgaged the mortgage lien constituted by the plaintiff *"without notifying the plaintiff*, and without the latter's consent." This being so, the result reached in the opinion is correct according to the rule announced in this opinion.

of the credit, the appellant shows that she had full knowledge of the existence of the submortgage, since she requested its cancellation. This being so, the concurrence of the holder of the promissory note secured by submortgage was necessary for the purpose of obtaining his consent to the cancellation sought. The sole purpose of the notice to the debtor is to prevent him, upon alleging ignorance, from paying the senior creditor, thereby rendering illusory the right of the submortgagee. Hence, if it is established that the debtor somehow has knowledge of the existence of the submortgage, such knowledge would be equivalent to a notice. This was precisely the holding of the General Directorate of the Registries in its decision of December 16, 1902 (III Roca Sastre and Molina Juyol, *Jurisprudencia Registral* 998, 1000 (Bosch ed., Barcelona, 1953)), in which under similar circumstances the registrar's decision was affirmed, "considering that in the very deed of cancellation object of the appeal it appears that in the act of execution the debtor already had knowledge of such records [of the submortgages], wherefore there is no question that the formality required by art. 153 [art. 152 of Puerto Rico, relative to the notice of the assignment] was met, the purpose of which is none other than to prevent the debtor, upon learning of the assignment or alienation of the credit, from paying the creditor without the concurrence of the person subrogated in his rights."

The decision appealed from will be affirmed.